## Case No. 10,158.

NEW ENGLAND SCREW CO. v. SLOAN.

[1 MacA. Pat. Cas. 210.]

Circuit Court, District of Columbia. April, 1853.

PATENT INTERFERENCES — PRESUMPTIONS FROM FAILURE TO PRODUCE WITNESSES—REDUCTION TO PRACTICE—LACHES.

[1. Failure to produce as witnesses several workmen who were in the inventor's shop at a time (long previous to his application) when it is claimed, a machine embodying the invention was put in actual use, should not raise an unfavorable presumption, since by publicity the inventor might have deprived himself of the benefits of the invention.]

[2. It is not necessary that the first inventor should have constructed and used a practical machine, even though a subsequent inventor has done so; and he need not show that he has reduced the invention to practice, otherwise than by filing his specifications and furnishing drawings and a model, as required by the statute.]

[3. One who made an invention in 1846, and did not file his application until 1851, but who in the meantime was making efforts to perfect his machine, *held* entitled to a patent, as against another who invented the same thing in 1849, and applied for a patent in 1852.]

[This was an appeal by the New England Screw Company, assignee of Cullen Whipple, from a decision of the commissioner of patents, in an interference proceeding, awarding priority to Thomas J. Sloan in respect to an invention of a machine for forming the point on screw blanks.]

Watson & Renwick, for appellant.
Chas. M. Keller, for appellee.

MORSELL, Circuit Judge. Cullen Whipple, after giving a description in his specification of the construction and operation of his improvement, and referring to the drawings as making a part of the specification, says: "What I claim as my invention, and desire to secure by letters-patent, is the mode of pointing the blank in the threading machine by a separate tool or cutter, thereby pointing the blank and cutting the thread with separate tools or cutters, and finishing a pointed screw from the blank at one operation, substantially as described." This application bears date the 20th of April, 1852. Thomas J. Sloan, in his specification, which describes his invention fully, says: "What I do claim as my invention is combining in an organized machine a cutter and its appendages, operated substantially as specified, for forming the point on screw-blanks, as specified, with the chaser or cutter, which cuts the thread over the blank and pointed part thereof down to the point, substantially as specified." This application appears to bear date on the 22d day of December, 1851 (afterwards patent No. 9688, April 26th, 1853).

From the descriptions and claims the specifications appear to be substantially for the same invention. On notice being given of the interference, the respective parties, under the rules of the patent office, had the depositions of their witnesses duly taken and sent to the commisioner of patents, who appointed the 17th day of June, 1852, for the trial of the issue between the said parties; and upon the hearing thereof, and on consideration of the testimony adduced, priority of invention was decided in favor of Thomas J. Sloan; from which decision said Cullen Whipple appealed, and filed his reasons of appeal: First. Because it appears from the testimony of Sloan's own witness that he never succeeded in making a practically useful machine, with a pointing and chasing or threading cutter combined. Second. Because it is not in proof that he ever succeeded in applying a pointing cutter, so as even to point a single screw-blank; or, in other words, he never succeeded in producing a machine which combined the functions of pointing and chasing or threading the blank. Third. Because the testimony was too vague and indefinite and contradictory to be received as evidence to prove said facts, while experts, who had a knowledge of the facts, might and ought to have been called upon to testify. Fourth. That as to the character and construction of the machines, the machines themselves are the best evidence, and ought to have been produced, or their absence satisfactorily accounted for, and that the parol evidence was inadmissible. I do not think this principle correct on the issue then trying between the parties. Fifth. Because there is

no legal evidence sufficient to prove that Sloan ever made the invention—the subject-matter in dispute. Sixth. Because the fact that Sloan patented, at various times between the years 1846 and 1852, the several improvements in screw machinery which he had so far perfected as to deem worthy of a patent, proves that he deemed the attempt to combine the pointer and chaser an abortion until after Whipple demonstrated its practicability. Seventh. Because it is proven that Whipple made the said invention in April, 1849; and as soon thereafter as time and opportunity would permit, viz., in December, 1851, he completed a machine embodying said invention, which worked successfully and satisfactorily in the opinion of the most competent experts, and has continued so to work, as those experts testify. Eighth. Because, although it is fully in proof that in December, 1851, Whipple had applied his invention and reduced it to practice, and put it in full operation, no machine has been produced on the part of Sloan of a date prior to December, 1851, effecting the same or similar result, nor has the deficiency been supplied by any oral proof that such ever did exist.

The report briefly states the substance of the evidence on the part of Sloan and Whipple. That which is stated in the deposition of Leggett, on the part of Sloan, seems to be principally relied on by the commissioner as the proof to sustain his decision in favor of Sloan as the first inventor, fixing his invention in the year 1846, whilst that of Whipple is not shown by his proofs to be earlier than the year 1849 (July). In his answer to the reasons of appeal the commissioner says: "The law does not regard him as the inventor who first constructs a machine and puts it into successful operation, but awards the invention to him who reasonably sets forth or exhibits his invention, even though it be not so shown or constructed as to be in operation." With respect to the evidence, he says that it does not show that Sloan did not put the invention into successful operation. On the contrary, it shows that he reduced the invention to practice in 1847, and at that time had in operation about thirteen machines, which were continued in use for about three months, &c. The objection on the part of Whipple that the invention did not belong to Sloan because he did not produce some other and stronger evidence than that which has been placed before the office, was not sufficient, because various circumstances may have operated against his doing so, which ought not to be assumed as reasons against his claim. It is in proof that his pecuniary condition was one of embarrassment, which is a very good reason why he did not continue his machines in operation. Then the machines, though successful, had certain difficulties in the way of feeding when both cutters were used; they also needed changes in the feeding part, &c. The commissioner further says, with respect to Sloan's not ap-plying for and obtaining a patent upon this invention as early as 1846 or 1847, when he was obtaining patents upon other improvements in machines for making screws, that this should not be urged against him. Many reasons might have operated, such as pecuniary embarrassment, &c. The liberal construction applied to Whipple's circumstances by his counsel in his seventh reason of appeal, if extended to Sloan's circumstances, will greatly lessen the force of the arguments made against Sloan. In that seventh reason it is admitted that Whipple let his invention sleep from 1849 to 1851. Why should not Whipple, then, be obliged to show stronger testimony in his behalf on this point as well as Sloan? According to notice previously given of the time and place of hearing before me, the parties by their counsel appeared, and an examiner from the patent office, who laid before me all the original papers and evidence in the case, together with the grounds of the commissioner's decision, set forth in writing, touching the points involved by the reasons of appeal. The said parties were allowed to file their arguments in writing, according to the established rules. The argument for the appellee was not filed within the time limited, and was for that reason objected to. But upon being satisfied of the reasonableness of the excuse for failing to do so, the objection is overruled and the argument received. As before stated, the two inventions for which patents are claimed are the same substantially, and it is admitted that both are patentable inventions. The question to be decided is that of priority of invention, and that will depend upon the evidence. Cullen Whipple's witnesses prove that about July, 1849, the invention alluded to in his specification was described to Thomas P. Hunt and to Mr. Packard in March or April, 1849. It was shown upon a slate, and the machine itself was erected and perfected in December, 1851. The question is whether he or Thomas J. Sloan is the first inventor, as above mentioned.

(A resumé of the testimony follows.)

What effect, then, ought to be given to the aforegoing testimony? If Leggett is worthy of credit, it will be difficult to resist the conclusion that Sloan was the first inventor of the improvement which is the subject of controversy. He proves that in the year 1846 he had a knowledge thereof, derived from Sloan, which he states very clearly and distinctly as follows: He invented a machine for pointing and threading wood-screws, which he describes to be "a combination of the two functions of pointing and threading with the same machine." The blank was reduced to a point and the thread cut by separate cutters. The model marked "Exhibit A," shown to him, represents the said invention; and this was in the month of June or July, 1847. The machines worked successfully. The weight of this testimony is supposed to be destroyed, first, because the witness himself

declares that he had but little acquaint-ance with machinery, and that he could not go into technicalities, &c.; but he also says that at the time he received the communication from Sloan he had, then, three or four years' acquaintance with machinery. I suppose counsel means that the witness had acquired this information after he first went to live with Sloan, which was in the year 1843; and further, that as there were a number of workmen in the shop of Sloan at this time who were acquainted with machinery, and none of whom were called as witnesses, or any reason for not doing it furnished, the law would raise an unfavorable presumption against him. If this had happened in an ordinary case the argument, perhaps, might have been more correct; but this is a case where, by publicity, the party might have deprived himself of the benefit he was seeking as the first inventor; and though the witness was no expert, his knowledge and memory might be sufficient to enable him truly to relate the facts on the subject which he had heard and seen. Next, as to the contradictions and inconsistencies in the testimony, there are such apparently, it is true, but it does not appear that they proceeded from corrupt motives. The presumption is that a witness on oath testifies honestly, until the contrary is shown. These circumstances may lessen, but not entirely destroy, his testimony—the rule of law being that where a witness stands wholly unimpeached by any extrinsic circumstances, credit ought to be given to his testimony, unless it be so grossly improbable as to show that he is not to be trusted. His testimony, too, is corroborated in several material parts from other sources. As to the fact of Sloan being an inventor of the improvement, it appears from his specification filed in 1851; and as to the principles being practicable, this is clear from successful experiments which have been made with machines subsequently used, embodying in substance the same principle. The witness Parfitt also corroborates him in several material parts. As to the last ground of argument on the subject of reducing the principle of the invention to a practical or useful result, I think the rule as laid down by Judge Cranch may be considered as correct: "That where the invention is not of a mere philosophical speculation, abstraction, or theory, but of something corporeal—something to be manufactured—the applicant need not show that he has reduced his invention to practice otherwise than by filing his specification and furnishing drawings and a model, as required by the statute, where the nature of the case admits of drawings or of a representation by model." In this case Sloan appears to have been making efforts to perfect his machine, and as yet I do not think he can be said to have forfeited his right by laches.

I think, therefore, and do so decide, that Cullen Whipple is not the original first inventor of the said improvement, but that Thomas J. Sloan is, and that the decision of the commissioner of patents ought to be, and is hereby, approved.